IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CHRISTOPHER CATES, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RELIANCE STANDARD | ) | |
| INSURANCE COMPANY | ) | CIVIL ACTION |
| | ) | |
| Defendant. | ) | FILE NO. _____ |
| | ) | |
| | ) | |
| | ) | |

## COMPLAINT

COMES NOW plaintiff Christopher Cates, M.D., and hereby files his

complaint against Reliance Standard Insurance Company ("Reliance Standard"),

respectfully showing to the Court as follows:

## Parties, Jurisdiction, and Venue

1.

Plaintiff Christopher Cates, M.D., is currently a citizen and resident of

Florida.

2.

Defendant Reliance Standard is an Illinois Corporation with its principal

office and principal place of business in Philadelphia, Pennsylvania.  Reliance

Standard is a citizen of Pennsylvania and/or Illinois and is subject to the jurisdiction and venue of this Court.  Reliance Standard may be served through its registered agent, Dale Morris, CT Corporation System, 1201 Peachtree Street Northeast, Atlanta, Georgia  30361.

3.

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because plaintiff and Reliance Standard are citizens of different states and the value of the matter in controversy, exclusive of interest and costs, exceeds $75,000.00.  In the alternative, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because Plaintiff is asserting claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq.

4.

Venue is proper pursuant to 28 U.S.C. § 1391 because Reliance Standard is a corporation residing in this District, and the claims arise in this District.

**Facts**

**The Plan**

5.

Dr. Cates is a medical doctor.  Until he became disabled in  2009, Dr. Cates was employed by The Emory Clinic, Inc. ("Emory") as an Interventional

Cardiologist.  As an employee of Emory, Dr. Cates was eligible for benefits under a Group Long Term Disability ("LTD") Insurance Policy issued to Emory by Reliance Standard, Policy No. LTD 112355 (the "Plan").

6.

The Plan qualifies as an employee welfare benefit plan under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, et seq., as defined by 29 U.S.C. § 1002(a).

7.

Reliance Standard is the claims fiduciary for the Plan, with the responsibility for making all claims decisions.  In addition, Reliance Standard  is responsible for the payment of claims under the Plan.

8.

The Plan is not self-funded by Emory.  Instead, Reliance Standard pays benefits due under the Plan out of Reliance Standard's own funds.

9.

All conditions and requirements imposed upon Dr. Cates by the Plan have been satisfied.

10.

The Plan provides that Reliance Standard will pay a monthly benefit if an Insured is "Totally Disabled" as a result of a sickness or injury covered by the Plan.

11.

As defined in the Plan, "Totally Disabled" and "Total Disability" mean, "that as a result of an Injury or Sickness, during the Elimination Period and thereafter an Insured cannot perform the material duties of his/her regular occupation."

12.

The Plan calculates an insured's benefit amount as follows:

(1)    multiply an Insured's Covered Monthly Earnings by the benefit percentage(s), as shown on the Schedule of Benefits page;

(2)    take the lesser of the amount:

(a)    of step (1) above; or

(b)    the Maximum Monthly Benefit, as shown on the Schedule of Benefits page; and

(3)    subtract Other Income Benefits, as shown below, from step (2) above.

13.

The Plan defines "Other Income Benefits" as follows:

Other Income Benefits are benefits resulting from the same Total Disability for which a Monthly Benefit is payable under this Policy. These Other Income Benefits are:

    (1)    disability income benefits an Insured is eligible to receive under any group insurance plan(s);

    (2)    disability income benefits an Insured is eligible to receive under any governmental retirement system, except benefits payable under a federal government employee pension benefit;

    (3)    all permanent as well as temporary disability benefits, including any damages or settlement made in place of such benefits (whether or not liability is admitted) an Insured is eligible to receive under:

        (a)    Workers' Compensation Laws;

        (b)    occupational disease law;

        (c)    any other laws of like intent as (a) or (b) above; and

        (d)    any compulsory benefit law;

    (4)    any of the following that the Insured is entitled to receive:

        (a)    wages or other compensation, excluding the amount allowable under the Rehabilitation Provision; and

        (b)    commissions or monies from you, including vested renewal commissions, but, excluding commissions or monies that the Insured earned prior to Total Disability which are paid after Total Disability has begun; and

(5)    disability or Retirement Benefits under the  United States Social Security Act, the Canadian pension plans, provincial plans, or any similar law for which an Insured is eligible to receive because of his/her Total Disability or eligibility for Retirement Benefits. Only the Insured's benefit will be included under this item.  We will not include benefits paid for his/her spouse or children.

14.

The Plan's Rehabilitation Provision provides as follows:

"Rehabilitative Employment" means work in any gainful occupation for which the Insured's training, education or experience will reasonably allow.  The work must be supervised by a Physician or a licensed or certified rehabilitation specialist approved by us.   Rehabilitative Employment includes work performed while Partially Disabled, but does not include performing all the material duties of his/her regular occupation on a full-time basis.

If an Insured is receiving a Monthly Benefit because he/she is considered Totally Disabled under the terms of this Policy and is able to perform Rehabilitative Employment, we will continue to pay the Monthly Benefit less an amount equal to 50% of earnings received through such Rehabilitative Employment.

. . .

An Insured will be considered able to perform Rehabilitative Employment if a Physician or licensed or certified rehabilitation specialist approved by us determines that he/she can perform such employment. If an Insured refuses such Rehabilitative Employment, or has been performing Rehabilitative Employment and refuses to continue such employment, the Monthly Benefit will be reduced by 50%, without regard to the Minimum Monthly Benefit.

15.

A true and correct copy of the Plan is attached hereto as **Exhibit A**.

**<u>Plaintiff's Disability</u>**

16.

Before becoming disabled, Dr. Cates practiced medicine as an Interventional Cardiologist for Emory.  Dr. Cates' "regular occupation," as that term in used in the Plan, is Interventional Cardiology.

17.

In April 2009, Dr. Cates became totally and permanently disabled from his regular occupation as an Interventional Cardiologist.  Because he could no longer perform the material duties required by his occupation, Dr. Cates was forced to discontinue practicing medicine as an Interventional Cardiologist.

18.

Since April 2009, Dr. Cates has not performed work in any gainful occupation related to his prior medical specialty of Interventional Cardiology, or for which he is qualified by his training, education, or experience.

19.

Since April 2009, Dr. Cates has not engaged in any physical activities inconsistent with his total disability or the restrictions imposed by his treating physician.

## **Plaintiff's Claim for Benefits**

### 20.

In September 2009, Dr. Cates submitted a claim for long term disability
("LTD") benefits under the Plan issued by Reliance Standard.

### 21.

Reliance Standard subsequently approved Dr. Cates' eligibility for LTD
benefits under the Plan and began paying him LTD benefits in the amount of
$11,747.47 per month.

### 22.

Over the next several years, Reliance Standard failed to handle Dr. Cates'
claim in good faith, repeatedly violating applicable provisions governing claims
under ERISA, as well as the terms and conditions of the Plan.  Among other
violations, Reliance Standard failed to pay LTD benefits in a timely manner,
would repeatedly threaten to "suspend" or reduce Dr. Cates' benefits based on
its claims that plaintiff should apply for Social Security disability benefits (even
though he is not eligible), and, at one point, denying Dr. Cates' claim based on its
erroneous determination that he was not "totally disabled."  Although Relaince
Standard would eventually correct these errors, Dr. Cates was forced to retain
counsel to protect his rights under ERISA and the Plan.

23.

Reliance Standard's bad faith has continued through the present.  In 2017, Reliance Standard demanded that Dr. Cates submit to an Independent Medical Examination even though his medical records and opinions by his treating physician continued to support plaintiff's total disability.  An Independent Medical Examination in June, 2017 confirmed that Dr. Cates is "totally disabled" as defined by the Plan.

24.

After its efforts to deny the claim or reduce benefits based on Social Security failed, Reliance Standard began to look for another way to reduce Dr. Cates' monthly LTD benefits.  These actions continued Reliance Standard's pattern and practice of bad faith claims handling.

25.

In July 2014, Dr. Cates completed an Activities of Daily Living Questionnaire at Reliance Standard's request.  In the questionnaire, Dr. Cates indicated that he did not have an ownership interest in any business related to his former occupation as an Interventional Cardiologist.  He also indicated that he received rental income, individual disability benefits, and investment income. Based on the terms, conditions and definitions set forth in the Plan, such income

or individual disability benefits would not reduce or otherwise impact the LTD

benefits payable to Dr. Cates by reason of his total disability.

26.

In September 2014, Reliance Standard requested additional information

regarding any businesses in which Dr. Cates may have an ownership interest

and details as to the source of any other income that he may have identified in

response to the Activities of Daily Living Questionnaire.

27.

In response, Dr. Cates, through counsel, requested that Reliance Standard

clarify the relevance of the information to his claim for LTD benefits under the

Plan.  Reliance Standard failed to respond.

28.

Thereafter, Reliance Standard failed to timely pay Dr. Cates' LTD benefits

payable under the Plan in June, July, and August of 2015.  Reliance Standard did

not pay benefits until after counsel wrote several letters and, ultimately, was

forced to threaten legal action.

29.

In September 2015, Dr. Cates completed a Supplementary Report for

Continued Long Term Disability Benefits at Reliance Standard's request.  In the

Report, he reported that he did not have an ownership interest in any business

related to his former occupation as an Interventional Cardiologist.  He also reported that he received rental income, individual disability benefits, and investment income.

30.

In December 2016, Reliance Standard again requested that Dr. Cates provide additional information regarding his response that he did not have an ownership interest in any business related to his former occupation as an Interventional Cardiologist.

31.

Dr. Cates again responded (through counsel) that he did not have any interest in any business related to his former occupation as an Interventional Cardiologist, nor was he working in any field that was in any way related to his former occupation as an Interventional Cardiologist.  He again requested clarification as to the necessity of the information and how it was relevant to his continued eligibility for LTD benefits under the Plan.

32.

In January 2017, Reliance Standard responded, informing Dr. Cates that it believed that his previous responses to the questionnaire and report suggested that he may have ownership or interest in businesses as well as income that  it believed could offset his LTD benefits.

33.

In July 2017, Reliance Standard requested copies of Dr. Cates' tax returns, "business and personal," from 2009 to the current date, purportedly for its ongoing investigation of his claim.  Reliance Standard informed Dr. Cates that failure to provide the requested information could result in the suspension of his LTD benefits. However, Reliance Standard failed to cite any provision of the Plan that would support this position.

34.

In fact, there is no provision of the Plan that would allow Reliance Standard to "suspend" benefits if the insured does not provide requested information.  Instead, LTD benefits are payable under the Plan as long as the insured meets the definition of "totally disabled."  That definition has nothing to do with Reliance Standard's request for Dr. Cates' tax returns.

35.

Dr. Cates declined to provide the tax returns, informing Reliance Standard (through counsel) that his confidential tax returns were not relevant to his continued eligibility for LTD benefits under the Plan.  As before, Dr. Cates requested that Reliance Standard identify the particular Plan provisions that would justify its demands for his confidential tax returns.

36.

-12-

Reliance Standard failed to respond to Dr. Cates' request.  Instead, by letter dated August 22, 2017, Reliance Standard informed Dr. Cates that it would "suspend" his claim because it had not received the requested tax returns.

37.

This "suspension of benefits" was an "adverse benefit determination" as defined by 29 C.F.R. § 2560.503-1(m)(4).  However, Reliance Standard failed to provide the information required by 29 C.F.R. § 2560.503-1(g) or otherwise comply with the provisions of 29 C.F.R. § 2560.503-1.

38.

Notwithstanding Reliance Standard's failure to comply with Plan guidelines and applicable provisions governing claims under ERISA, Dr. Cates appealed the adverse benefit determination by letter dated September 19, 2017.

39.

By letter dated November 9, 2017, Reliance Standard informed Dr. Cates that it had decided to reverse its prior decision to "suspend" his claim.  However, Reliance Standard indicated that it would only pay Dr. Cates a "Minimum Monthly Benefit" until it received detailed documentation of the wages and other compensation that he received or was eligible to receive during the period of Total Disability.

40.

This decision to reduce benefits was also an "adverse benefit determination" as defined by 29 C.F.R. § 2560.503-1(m).  As with its previous decision, Reliance Standard again failed to provide the information required by 29 C.F.R. § 2560.503-1(g) or otherwise comply with the provisions of 29 C.F.R. § 2560.503-1.

41.

By letter dated November 15, 2017, Dr. Cates demanded (through counsel) that Reliance Standard reinstate his claim, pay all past-due benefits, and continue to pay him the full amount of benefits under the Plan going forward.

42.

To date, Reliance Standard has failed to pay Dr. Cates the full amount of LTD benefits owed under the Plan and continues to only pay him the "Minimum Monthly Benefit" payment of $1,174.75.

43.

Dr. Cates has remained "totally disabled" as defined by the Plan since April 2009.  Dr. Cates has consistently provided proof to Reliance Standard of his "total disability" and has complied with all reasonable requests for information related to his disability and claim for LTD benefits under the Plan.

44.

Dr. Cates has not received any income that would qualify as "Other Income Benefits," as defined by the Plan, nor has he earned any income that could be used by Reliance Standard to reduce the LTD benefits payable to him under the Plan.

45.

Dr. Cates has likewise not received any income from "Rehabilitative Employment," as defined by the Plan, nor has he worked  in any gainful occupation for which his training, education, or experience will reasonably allow.

46.

Any income received by Dr. Cates since April 2009 does not qualify as Other Income Benefits that would offset his LTD benefits under the Plan.

47.

The Plan that does not require Dr. Cates to provide his confidential tax returns to Reliance Standard as a condition to receive LTD benefits.  Dr. Cates' confidential tax returns are not relevant to Reliance Standard's determination of the LTD benefits owed to him under the Plan or its determination of whether he is "totally disabled."  Reliance Standard has failed to cite any applicable Plan

language that would support its adverse benefit determination and has failed to strictly adhere to all requirements of 29 C.F.R. § 2560.503-1.

48.

Dr. Cates has exhausted his administrative remedies.

## COUNT I

## DECLARATORY JUDGMENT: 29 U.S.C. § 1132(a)(1)(B)

49.

All allegations contained in Paragraphs 1 through 48 above are re-alleged and incorporated by reference as if fully set forth herein.

50.

Dr. Cates is a participant in an employee welfare benefit plan governed by ERISA.

51.

Dr. Cates has been "totally disabled" as defined by the Plan since April 2009, and remains totally disabled at this time.

52.

Dr. Cates has not received "Other Income Benefits" as defined by the Plan at any time since the onset of his disability in April 2009.

53.

Dr. Cates' rental income, individual disability benefits, and investment income do not qualify as "Other Income Benefits" as defined by the Plan.

54.

Although Dr. Cates has provided proof of his "total disability," Reliance Standard has refused to pay the full amount of LTD benefits owed to him under the Plan.

55.

Reliance Standard's actions have created an actual controversy between plaintiff and defendant.

56.

Pursuant to 28 U.S.C. § 2201 and 29 U.S.C. § 1132(a)(1)(B), Dr. Cates is entitled to a declaratory judgment that (1) he is "totally disabled" as defined by the Plan and (2) he has not received "Other Income Benefits" that would offset or otherwise reduce the LTD benefits payable to him under the Plan.

## COUNT II

## CLAIM FOR PAST DUE BENEFITS: 29 U.S.C. 1132(a)(1)(B)

57.

The allegations contained in Paragraphs 1 through 56 above are re-alleged and incorporated by reference as if fully set forth herein.

58.

Dr. Cates is entitled to LTD benefits in the amount of $11,747.47 per month under the Plan.

59.

By refusing to pay the full amount of LTD benefits owed to Dr. Cates, Reliance Standard has breached the terms and conditions of the Plan.

60.

Reliance Standard is liable to Dr. Cates for LTD benefits in the amount of $10,572.72  per month, which accounts for the difference between the full amount of LTD benefits to which he is entitled and the "Minimum Monthly Benefit" currently being paid to him, from August 15, 2017 through the date of judgment, plus interest as provided by law.

## COUNT III

## ATTORNEYS' FEES: 29 U.S.C. § 1132(g)

61.

The allegations contained in Paragraphs 1 through 60 above are re-alleged and incorporated by reference as if fully set forth herein.

62.

Pursuant to 29 U.S.C. § 1132(g), the Court may award reasonable attorneys' fees and costs of bringing the action.

63.

Reliance Standard acted in bad faith in reducing Dr. Cates' monthly LTD benefit amount and in otherwise violating applicable requirements of the Department of Labor, ERISA and the terms and conditions of the Plan.

64.

Reliance Standard's actions are part of a continuing pattern of bad faith, as will be established more fully at trial.  This bad faith includes a repeated failure to comply with applicable requirements of the Department of Labor, violations of ERISA, and violations of the terms and conditions of the Plan.

65.

Because of Reliance Standard's bad faith, this Court should award Dr. Cates his reasonable attorneys' fees and the costs of bringing this action.

WHEREFORE, plaintiff Christopher Cates, M.D.,  prays that the Court:

(a)    Issue a declaratory judgment that Dr. Cates  (1) is "totally disabled" and (2) has not received any "Other Income Benefits" that would offset his LTD benefit amount;

(b)    Award all unpaid past due benefits in the amount of $10,572.72  per month since August 15, 2017.

(c)    Award all applicable pre- and post-judgment interest;

(d)     Award Dr. Cates the reasonable costs and expenses of this action,

including reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g); and

(e)     Grant such other and further relief as this Court deems just and

appropriate.

This 5th day of February, 2018.

Swift Currie McGhee & Hiers

s/ David M. Atkinson

_____

David M. Atkinson
Georgia Bar No. 026460
david.atkinson@swiftcurrie.com
Rachel W. Mathews
Georgia Bar No. 537964
rachel.mathews@swiftcurrie.com
*Attorneys for Plaintiff*

The Peachtree, Suite 300
1355 Peachtree Street, N.E.
Atlanta, GA  30309
(404) 874-8800

3622684v.1